**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MITCHELL L. GADBERRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18CV321  JMB |
| | ) | |
| ANNE PRECYTHE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on the motion of plaintiff Mitchell Gadberry for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2). Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $25.54. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss plaintiff's claims without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

**28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits to the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's

account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

In support of the motion, plaintiff has submitted a certified inmate account statement. (Docket No. 3). The certified inmate account statement shows an average monthly deposit of $127.70. The Court will therefore assess an initial partial filing fee of $25.54, which is 20 percent of plaintiff's average monthly deposit.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim for relief under 42 U.S.C. § 1983, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but "does not accept as true any legal conclusion couched as a factual allegation"). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679.

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction"

means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistake by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff is currently an inmate at Missouri Eastern Correctional Center, in Pacific, Missouri. He brings this action pursuant to 42 U.S.C. § 1983. His complaint names the following defendants: Anne Precythe, George A. Lombardi, Kenneth Jones, Jennifer Zamkus, Jim Wells, Martin Rucker, Ellis McSwain, Jr., Don Ruzicka, Gary Dusenberg, Julie Kempker, Peg McClure, Nancy McCarthy, Joe Hoffmeister, Charles Buerck, Jennifer Shankle, Derek Vaughn, Unknown Gollon, James Berry, and Joel Bearden. Defendants Precythe, Lombardi, and Zamkus are sued in their official capacities. Defendants Jones, Wells, Rucker, McSwain, Jr., Ruzicka, Dusenberg, Kempker, McClure, McCarthy, Hoffmeister, Buerck, Shankle, Vaughn, Gollon, Berry, and Bearden are sued in both their individual and official capacities.

In his complaint, plaintiff states that defendant Bearden is a District 25 parole officer. Bearden issued an emergency warrant against plaintiff when plaintiff was arrested on a separate charge. (Docket No. 1 at 13). According to plaintiff, Bearden failed to deliver a copy of the

warrant, a copy of the violation report, and a copy of the evidence report within two days of the issuance of the emergency warrant. Plaintiff claims this is a violation of procedure. He also states that Bearden failed to read him his rights, and did not give him the booklet on his rights to a preliminary or revocation hearing. (Docket No. 1 at 13-14). Plaintiff further claims that Bearden did not write down his entire statement, failed to inform his supervisor that a preliminary hearing should be automatically held, and failed to hold a preliminary hearing within ten days. (Docket No. 1 at 14). Plaintiff alleges that due to Bearden's violation of his due process rights, he was transported to the Missouri Department of Corrections without a parole violation and without a preliminary hearing.

Defendant Berry is the District 25 District Administrator. Plaintiff alleges that Berry allowed Bearden's actions. He further claims that Berry turned "a blind eye" on plaintiff's request for a complaint form, and also refused to answer a "printed Due Process Complaint" mailed to his office. (Docket No. 1 at 14-15).

On June 17, 2016, plaintiff was accepted into the Department of Corrections at the Eastern Reception and Diagnostic Center in Bonne Terre, Missouri. (Docket No. 1 at 15). Plaintiff alleges that at this time, he had no violations, no warrants for any crimes, no pending charges, and had not had a probable cause hearing.

Defendant Vaughn is an Institutional Parole Officer. On June 27, 2016, plaintiff met with Vaughn. Plaintiff states that Vaughn gave him the "Offender Rights to Preliminary Revocation Hearing" booklet. He signed a form to receive a preliminary hearing and was given notice that the hearing would be held on June 30, 2016. Plaintiff claims that Vaughn did not give him copies of the emergency warrant or police report, and did not make the adverse witness available for questioning. He also claims that Vaughn was present during the preliminary hearing and during

the questioning of a witness, which plaintiff asserts is "against procedure." Several of plaintiff's claims against Vaughn have to do with the "Complaint Procedure." (Docket No. 1 at 16). Plaintiff claims that Vaughn, as an Institutional Parole Officer, was supposed to provide him with a complaint form. However, plaintiff alleges that Vaughn was misleading about the procedure; that Vaughn refused to give him forms when requested; that Vaughn gave him "false information" about how to get the form; that Vaughn refused to explain how the procedure works; and that Vaughn did not answer plaintiff's kites.

Defendant Gollon is also an Institutional Parole Officer. Plaintiff states that Gollon answered a kite requesting a complaint form that was addressed to defendant Vaughn. He alleges that Gollon was "dishonest" and would not give plaintiff the complaint form. He further alleges that Gollon refused to answer any of plaintiff's kites. Moreover, plaintiff alleges that Gollon either received or "intercepted' a kite addressed to defendant Buerck complaining that Gollon had not responded to him. According to plaintiff, Gollon came to his cell in a "hostile manner" with the complaint and told him not to write any more kites to him or anyone else. (Docket No. 1 at 17). Plaintiff asserts that Gollon was "threatening" towards him.

A preliminary hearing was held on June 30, 2016. Plaintiff states that defendant Shankle, the Unit Supervisor, held the preliminary hearing. He alleges that Shankle did not have the adverse witnesses available for questioning or cross examination. Defendant Bearden appeared at the hearing telephonically. Plaintiff alleges that he questioned Bearden and that Bearden "admitted" he used information in a police report to make his violation. Plaintiff asserts that the police report contained only the victim's statement, which is hearsay. During the hearing, Shankle allowed defendant Vaughn to be present. (Docket No. 1 at 17-18). Plaintiff alleges this is a violation of procedure. (Docket No. 1 at 18). Plaintiff also alleges that Shankle wrongly

made him choose between giving a verbal statement or written documentation. During the hearing, Shankle did not question plaintiff about the violation. Plaintiff claims that Shankle did not acknowledge his written documentation or consider his evidence. Instead, she went solely off Bearden's field violation report.

Defendant Buerck is a District Administrator for District 25. On July 12, 2016, plaintiff filed a complaint with Buerck regarding alleged due process violations committed by Vaughn and Shankle during the preliminary hearing. Plaintiff asserts that Buerck "turned a 'Blind Eye' to this complaint." He further asserts that Buerck "turned a blind eye" to plaintiff's request for an attorney during his revocation hearing. (Docket No. 1 at 19). Plaintiff states that Buerck refused to answer a question about exhausting grievance procedures, and also refused to respond to a complaint he had filed against Shankle and Vaughn. Plaintiff filed a complaint against Buerck for not responding to plaintiff's other complaints. Despite this, Buerck was present as a board member at both plaintiff's revocation hearing and parole consideration hearing, which plaintiff states is a conflict of interest and a due process violation.

Plaintiff alleges that his pending criminal charge, for which he had been violated, was dismissed. (Docket No. 1 at 20). Nevertheless, plaintiff claims that Buerck refused to answer his request for a reconsideration hearing. He also alleges that Buerck refused to address a complaint concerning defendant Gollon that he filed with Buerck.

On August 10, 2016, plaintiff sent a complaint against Buerck to defendant Hoffmeister, the Assistant Warden of Eastern Reception, Diagnostic & Correctional Center. The complaint to Hoffmeister about Buerck addressed other complaints that Buerck had not answered. Plaintiff alleges that Hoffmeister "turned a blind eye" to the complaints by not responding to them. (Docket No. 1 at 21).

Defendant Nancy McCarthy is the Probation and Parole Administrator for the Eastern Region. Plaintiff states that he sent her copies of his complaints and asked her if he was filing them properly. He alleges that McCarthy did not respond. On August 18, 2016, plaintiff states that he sent a complaint to McCarthy regarding Buerck's alleged conflict of interest in appearing as a board member at his revocation hearing. Plaintiff asserts that he received no response from McCarthy.

Defendant McClure is the Assistant Division Director. On January 15, 2017, plaintiff sent a complaint to McClure about Buerck attending his parole reconsideration hearing as board member. (Docket No. 1 at 21-22). As before, plaintiff complained that Buerck's presence as a board member presented a conflict of interest, since plaintiff had filed a complaint against Buerck. (Docket No. 1 at 22).

Plaintiff states that on February 1, 2017, he received a response from the Parole Board giving him a release date of July 1, 2018. He claims this is a year above the guidelines.

On March 2, 2017, plaintiff was taken to Butler County Municipal Court for a preliminary hearing on a charge of felonious restraint. Plaintiff states that the prosecutor decided to dismiss the charge.

On March 8, 2017, plaintiff received a detainer withdrawal notice. Plaintiff asserts that on the same day, he wrote to the Board of Probation and Parole requesting a reconsideration hearing. According to plaintiff, he also sent requests to Buerck and Gollon requesting a new hearing or immediate release. (Docket No. 1 at 23). Plaintiff alleges that he received no responses "from anyone."

Plaintiff states that on April 18, 2017, having heard no responses to his complaints, he sent copies of the complaints to Chief State Supervisor Kempker. He states that he told defendant

Kempker that Board of Probation and Parole personnel had "turned a blind eye" and disregarded his due process rights. Plaintiff claims that Kempker also refused to address his complaints.

On April 24, 2017, plaintiff sent a letter of complaint to defendant Jones, the Division Director. Plaintiff's complaint alleged due process violations by defendants Bearden, Vaughn, Shankle, Buerck, and Gollon. The letter also advised Jones that his complaints had not been addressed by anyone in the chain of command. (Docket No. 1 at 24). According to plaintiff, Jones also "turned a blind eye."

Plaintiff claims that the actions taken by the various defendants "directly or indirectly" violated his constitutional rights under the Fifth, Sixth, and Fourteenth Amendments. (Docket No. 1 at 5). He wants a change in Probation and Parole Procedure P3-8.1, because he does not "think it is right that just because someone is arrested that they have committed a crime." (Docket No. 1 at 38). He is also requesting the following money damages: attorney fees; filing fees; court costs; reimbursement for any losses incurred since his incarceration, including loss of furniture, clothing, tools, or other properties, money stolen, and outstanding debts created; damages of $50,000 from every Board of Probation and Parole employee; $50,000 from all Department of Corrections Employees in their official capacities; $100,000 for physical pain since incarceration; $100,000 for mental anguish since incarceration; and $100 for every day of "wrongful incarceration." (Docket No. 1 at 38-39).

## Discussion

Plaintiff's complaint alleges that defendants Precythe, Lombardi, Jones, Zamkus, Wells, Rucker, McSwain, Jr., Ruzicka, Dusenberg, Kempker, McClure, McCarthy, Hoffmeister, Buerck, Shankle, Vaughn, Gollon, Berry, and Bearden violated his constitutional rights with regards to the revocation of his parole. Defendants Precythe, Lombardi, and Zamkus are sued in

their official capacities. The remaining defendants are sued in both their individual and official capacities. Having carefully reviewed and liberally construed plaintiff's allegations, and for the reasons discussed below, the Court must dismiss plaintiff's complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B).

### A. Official capacity claims

The official capacity claims against defendants Precythe, Lombardi, Jones, Zamkus, Wells, Rucker, McSwain, Jr., Ruzicka, Dusenberg, Kempker, McClure, McCarthy, Hoffmeister, Buerck, Shankle, Vaughn, Gollon, Berry, and Bearden must be dismissed.

A suit brought against a state official in his or her official capacity pursuant to § 1983 is not a suit against the official, but rather a suit against the official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). In other words, the real party in interest in an official-capacity suit is not the named official, but the governmental entity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). *See also Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent"). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will*, 491 U.S. at 71. Moreover, in the absence of a waiver, the Eleventh Amendment bars suit against a state official acting in his or her official capacity. *Morstad v. Dep't of Corr. & Rehab.*, 147 F.3d 741, 744 (8th Cir. 1998).

All the defendants in this case are alleged to work for the Missouri Department of Corrections or the Missouri Board of Probation and Parole. The Missouri Department of Corrections and the Missouri Board of Probation and Parole are state agencies of the State of Missouri. Accordingly, plaintiff's official capacity claims are really claims against the state.

Such claims are barred because a state is not a "person" for purposes of § 1983, and because the Eleventh Amendment[1] bars suits against state officials acting in their official capacity.

Even if plaintiff's claims were not barred, he has still failed to allege any facts to support official-capacity liability. In order for § 1983 liability to attach to a governmental entity in an official capacity suit, the plaintiff must show that the constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *See Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018). Thus, there are three ways in which a plaintiff can establish liability in an official capacity suit.

First, "policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). *See also Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible…for establishing final policy with respect to the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390.

Alternatively, in order to establish a claim of liability based on "custom," the plaintiff must demonstrate:

---

[1] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI.

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013). Finally, to demonstrate deliberate indifference for purposes of failure to train, the plaintiff must show a "pattern of similar constitutional violations by untrained employees." *S.M. v Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Here, plaintiff has not alleged facts demonstrating an unconstitutional official policy, unofficial custom, or failure to train or supervise. Plaintiff points to no official policy, either unconstitutional on its face or in practice, as the cause of his alleged due process violations. Similarly, he does not assert any facts from which it can be inferred that an unofficial policy caused the alleged constitutional violations against him. While plaintiff does note many instances where he believes defendants did not follow the proper procedure in revoking his parole, he does not allege that this constituted a persistent and widespread pattern of conduct, or that policymaking officials had notice of this misconduct and were deliberately indifferent towards it. Finally, plaintiff does not provide any facts whatsoever indicating a deliberately indifferent failure to train or supervise.

Therefore, for these reasons, plaintiff has failed to state a claim against defendants in their official capacities. As such, these claims must be dismissed.

**B. Individual capacity claims against defendants Rucker, McSwain, Jr., Ruzicka, and Dusenberg**

According to plaintiff's complaint, defendants Rucker, McSwain, Jr., Ruzicka, and Dusenberg are board members of the Board of Probation and Parole. (Docket No. 1 at 2). As board members, these defendants are entitled to absolute immunity, and plaintiff's claims against them must be dismissed.

Officials who have duties functionally comparable to those of judges are entitled to absolute immunity. *Anton v. Getty*, 78 F.3d 393, 395 (8th Cir. 1996). To that end, members of a parole board "are entitled to absolute immunity when considering and deciding parole questions, as this function is comparable to that of judges." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006). *See also Evans v. Dillahunty*, 711 F.2d 828, 830-31 (8th Cir. 1983) (explaining that parole board officials are entitled to absolute immunity because "in deciding to grant, deny, or revoke parole, [they] perform functions comparable to those of judges"); *Jones v. Moore*, 986 F.2d 251, 253 (8th Cir. 1993) (stating that a member of the Missouri Parole Board was entitled to absolute immunity while performing his official duties). "In determining whether officials have acted within their official jurisdiction for purposes of absolute immunity, the inquiry focuses on whether the subject matter of the decision was within the official's power, and whether the official was acting in her official capacity at the time of the decision." *Figg v. Russell*, 433 F.3d 593, 598 (8th Cir. 2006).

Plaintiff's allegations against Rucker, McSwain, Jr., Ruzicka, and Dusenberg are based solely on their status as parole board members, and the fact that they decided to revoke his parole. Plaintiff states that at his revocation hearing, he was told to "hurry up" when he asked to speak. (Docket No. 1 at 36). He also asserts that the board members were preparing for the next

hearing while he was trying to explain his evidence. Moreover, plaintiff alleges that the board members found him guilty based on hearsay, and despite the fact that he presented "more evidence." The decision of a parole board to grant, deny, or revoke an individual's parole is a function comparable to that of a judge, and is entitled to absolute immunity. Plaintiff's allegations make clear that the board member defendants were acting in their official capacities when they rendered their decision. Furthermore, the subject matter of that decision, to revoke plaintiff's parole, is within the power of the parole board. Accordingly, defendants Rucker, McSwain, Jr., Ruzicka, and Dusenberg are entitled to absolute immunity as parole board members. As such, plaintiff's claims against them must be dismissed.

## C. Individual capacity claims against defendants Gollon, Hoffmeister, McCarthy, McClure, Kempker, and Jones

Plaintiff alleges that defendants Gollon,[2] Hoffmeister, McCarthy, McClure, Kempker, and Jones violated his constitutional rights by failing to respond to his complaints. These allegations do not state a claim because defendant does not have a liberty interest in receiving such responses.

An inmate has a liberty interest in the nature of his confinement, but not in the procedures by which the state believes it can best determine how the inmate should be confined. *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996). As such, "there is no federal constitutional

---

[2] As to defendant Gollon, plaintiff further alleges that Gollon came to his cell in a "hostile manner" holding the complaint that plaintiff filed against him. (Docket No. 1 at 17). Plaintiff alleges that Gollon shoved the paperwork into plaintiff's cell and told him not to write to anyone, including him, anymore. Plaintiff also states that Gollon was "threatening to me." These allegations do not state a claim. First, plaintiff does not allege that any adverse action was taken against him, sufficient to state a claim for retaliation. *See Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004) (explaining that to establish a First Amendment retaliation claim under § 1983, a plaintiff must show that a "government official took adverse action against him that would chill a person of ordinary firmness from continuing" the protected activity). Second, plaintiff's statement that Gollon was "threatening" is not, in and of itself, actionable. *See Turner v. Mull*, 784 F.3d 485, 492 (8th Cir. 2015) ("Generally, mere verbal threats made by a state-actor do not constitute a § 1983 claim").

liberty interest in having state officers follow state law or prison officials follow prison regulations." *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003).

Plaintiff's claims against defendants Gollon, Hoffmeister, McCarthy, McClure, Kempker, and Jones stem from complaints he sent them regarding perceived due process violations he encountered during the parole revocation process. Plaintiff alleges that defendant Gollon refused to give him a complaint form and refused to answer any of plaintiff's parole kites. (Docket No. 1 at 16). Plaintiff states he sent a complaint about defendant Buerck to defendant Hoffmeister, the Assistant Warden at the Eastern Reception, Diagnostic & Correctional Center, to which he received no reply. (Docket No. 1 at 20-21). After that, and following what he believed to be the "chain of command," plaintiff sent copies of his complaints to defendant McCarthy, the Board of Probation and Parole Administrator for the Eastern Region. (Docket No. 1 at 21). McCarthy also did not respond. Plaintiff next complained to defendant McClure, Assistant Division Director, though he does not allege whether or not she responded. (Docket No. 1 at 22). Subsequently, plaintiff sent his complaints to defendant Kempker, the Chief State Supervisor. (Docket No. 1 at 23). He claims she also "refused to address" his complaints. Finally, he sent a complaint letter to defendant Jones, the Division Director. He states that Jones "turned a blind eye" to his complaints. (Docket No. 1 at 24).

Plaintiff's allegations do not implicate these particular defendants in any constitutional violations directly connected to his parole revocation. Rather, plaintiff alleges that his complaints about the revocation process, and those individuals he deems responsible, went unanswered. He states that in filing his complaints, he attempted to follow the "chain of command" set out by the prison. Nonetheless, he received no replies.

Assuming these defendants were responsible under state law for answering plaintiff's complaints, their alleged failure to follow state law does not implicate a constitutionally-protected liberty interest. *See Phillips*, 320 F.3d at 847. Plaintiff's allegations against these defendants are akin to a complaint about a prison's handling of an inmate's grievances. However, an inmate has no constitutional right to have his grievances processed. *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) ("A prison grievance procedure is a procedural right only, [and] it does not confer any substantive right upon the inmates"); *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (explaining that inmate failed to state a claim relating to his grievances because the denial of inmate's grievances did not state a substantive constitutional claim). Similarly, plaintiff does not have a constitutional right in the processing of his complaints sent to employees of the Board of Probation and Parole. Not every violation of a state-mandated procedure is a constitutional violation. *Buckley*, 997 F.2d at 495. Here, even if defendants Jones, Kempker, McClure, McCarthy, and Hoffmeister failed to follow procedure and answer plaintiff's numerous complaints, that failure does not have a constitutional dimension. Accordingly, plaintiff's claims against these defendants must be dismissed.

### D. Individual capacity claims against defendant Berry

Plaintiff alleges that defendant Berry violated his constitutional rights by failing to respond to a complaint and by "allowing" defendant Bearden's actions. The claims against Berry must be dismissed.

Plaintiff claims that Berry is the District Administrator for District 25. (Docket No. 1 at 14). He alleges that Berry allowed the actions of defendant Bearden, a parole officer, to occur. He also claims that Berry "turned a blind eye" to plaintiff's request for a complaint form, and refused to answer a complaint that plaintiff mailed to Berry's office. (Docket No. 1 at 14-15).

As noted above, "there is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations." *Phillips*, 320 F.3d at 847. Nor does a plaintiff have a constitutional right to the processing of his grievances. *Buckley*, 997 F.2d at 495. To the extent that plaintiff's claims against Berry rest upon Berry's alleged failure to respond to plaintiff's complaint, such claim fails because plaintiff does not have a constitutional right to have his complaints processed or to have state officials follow state law.

Broadly construed, plaintiff's assertion that Berry committed a constitutional violation by "allowing Parole Officer Joel Bearden's actions" can be read to assert supervisory liability against Berry. In order to maintain an action for training or supervisory liability, the plaintiff must show that the failure to train or supervise caused the injury. *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 849 (8th Cir. 2011). *See also Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) ("[A] supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation"). The standard used to determine liability for failure to train is deliberate indifference. *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 673 (8th Cir. 2007). To show deliberate indifference, a plaintiff must prove that the defendant had notice that the procedures were inadequate and likely to result in a violation of constitutional rights. *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005).

However, plaintiff fails to state a claim for supervisory liability. Plaintiff provides no supporting factual allegations beyond this statement. He does not explain what he means when he says that Berry was "allowing" Bearden's actions. Moreover, he does not provide any facts to the effect that Bearden's actions were a result of Berry's failure to train or supervise. He also does not allege any facts showing that Berry had notice of inadequate procedures that were likely

to result in a constitutional violation. The entire allegation rests on the conclusion that Berry allowed defendant Bearden's actions to occur. The Court is not required to accept such conclusory pleadings as true. *See Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (stating that court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements"). Accordingly, to the extent that plaintiff has asserted a claim of supervisory liability, that claim must be dismissed.

### E.  Individual capacity claims against defendant Buerck

Plaintiff alleges that defendant Buerck refused to address complaints that plaintiff made against other defendants, and failed to answer his questions about the grievance process. (Docket No. 1 at 18-19). Plaintiff also alleges that Buerck appeared as a parole board member at his revocation hearing and video parole consideration hearing. (Docket No. 1 at 19). He claims this constitutes a conflict of interest, since plaintiff had previously filed complaints about Buerck for not responding to complaints filed on other defendants. Plaintiff states that Buerck also failed to respond to plaintiff's request for a reconsideration hearing after his parole was revoked.

Plaintiff's allegations regarding Buerck's failure to respond to his complaints does not state a claim. As previously noted, "there is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations." *Phillips*, 320 F.3d at 847. Even if Buerck was required to respond to plaintiff's complaints, plaintiff does not have a protectable liberty interest in that response. Without a protectable liberty interest, plaintiff cannot state a constitutional violation.

Plaintiff's claims against Buerck in his role as a parole board member must also be dismissed because a parole board member is entitled to absolute immunity. *See Mayorga*, 442 F.3d at 1132 (stating that members of a parole board "are entitled to absolute immunity when

considering and deciding parole questions, as this function is comparable to that of judges"); *Evans*, 711 F.2d at 830-31 (explaining that parole board officials are entitled to absolute immunity because "in deciding to grant, deny, or revoke parole, [they] perform functions comparable to those of judges"); and *Jones*, 986 F.2d at 253 (stating that a member of the Missouri Parole Board was entitled to absolute immunity while performing his official duties).

Plaintiff alleges that Buerck participated in a parole board decision despite a conflict of interest, thereby violating his due process rights. He also states that Buerck did not respond to his request for a reconsideration hearing, after his parole was revoked. As a parole board member, Buerck is acting in a capacity comparable to that of a judge. As such, he has absolute immunity in making the decision to grant, deny, or revoke parole. Plaintiff's allegations against Buerck concern Buerck's performance of his official duties; that is, the crux of plaintiff's complaint is that Buerck participated in a decision to revoke plaintiff's parole, and later, refused to grant him a reconsideration hearing. This type of action by a parole board member in entitled to absolute immunity. Therefore, plaintiff's claims against Buerck must be dismissed.

**F. Individual capacity claims against defendants Bearden, Vaughn, and Shankle**

Plaintiff alleges that the actions of defendants Bearden, Vaughn, and Shankle in revoking his parole violated his constitutional rights. The claims against these defendants must be dismissed for two reasons: first, because plaintiff does not have a constitutionally protected liberty interest in the possibility of parole; and second, because success on his claims would inappropriately imply the invalidity of his parole revocation.

Plaintiff's claims against defendants Bearden, Vaughn, and Shankle focus on alleged due process violations during the parole revocation process.

Plaintiff alleges that Parole Officer Bearden violated his due process rights during the parole revocation process by failing to give him a copy of the warrant, failing to read him his rights, failing to give him a copy of the Offender Rights to a Preliminary or Revocation Hearing booklet, refusing to write down plaintiff's entire statement, failing to hold a preliminary hearing within ten days, and making a violation based only off of a police report, which contained hearsay.

Plaintiff alleges that Institutional Parole Officer Vaughn did not give him a copy of the emergency warrant, did not give him a copy of the police report, did not have adverse witnesses available for questioning, and was present during the preliminary hearing and during the questioning of a witness, in violation of procedure.[3]

Plaintiff alleges that Unit Supervisor Shankle, who acted as the hearing officer at the preliminary hearing, did not have adverse witnesses ready for questioning and cross examination, allowed Vaughn to be present for the hearing, made plaintiff choose between delivering a written or verbal statement, did not question plaintiff, "did not acknowledge anything within the written documentation" plaintiff provided, did not consider plaintiff's evidence, and went solely off of Bearden's field violation report in making her decision.

The Supreme Court has stated that a convicted person has no constitutional or inherent right to be conditionally released before the expiration of a valid sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). In other words, an inmate does not have a protected, federal due process right to parole. *Jenner v. Nikolas*, 828 F.3d 713, 716 (8th Cir.

---

[3] Plaintiff also alleges that Vaughn was dishonest about the grievance process, refused to give him complaint forms, refused to explain how the complaint process worked, and refused to answer any of plaintiff's kites. As discussed above, plaintiff has no constitutional right to have his grievances processed. *See Buckley*, 997 F.2d at 495 ("A prison grievance procedure is a procedural right only, [and] it does not confer any substantive right upon the inmates"); *Lomholt*, 287 F.3d at 684 (explaining that inmate failed to state a claim relating to his grievances because the denial of inmate's grievances did not state a substantive constitutional claim).

2016). Moreover, Missouri's "parole statutes create no liberty interest under state law in the parole board's discretionary decisions." *Adams v. Agniel*, 405 F.3d 643, 645 (8th Cir. 2005).

According to plaintiff, defendants Bearden, Vaughn, and Shankle violated his constitutional right to due process by failing to provide him with an adequate parole revocation hearing. As outlined above, he claims that each of these individual defendants failed to follow the proper procedures during the revocation process. However, the law does not provide inmates with a constitutionally-protected liberty interest in the possibility of parole. Plaintiff's allegations cannot support a due process claim unless there is a protectable liberty interest. Therefore, the facts set forth against defendants Bearden, Vaughn, and Shankle do not support a cause of action under § 1983.

Even if plaintiff's complaint is construed to create a viable liberty interest, his claims would be barred. In *Heck v. Humphrey*, the Supreme Court faced the issue of whether a state prisoner could challenge the constitutionality of his criminal conviction in a suit for damages under § 1983. 512 U.S. 477, 478 (1994). The Court determined that the plaintiff's § 1983 action for damages was not cognizable. *Id*. at 483. In doing so, the Court noted that a § 1983 action was not the appropriate vehicle for challenging criminal judgments. *Id*. at 486.

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus…A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Id*. at 487-88. Thus, when a state prisoner seeks damages pursuant to § 1983, the district court has to consider whether a judgment for the plaintiff would "necessarily imply the invalidity of

his conviction or sentence." *Id*. at 488. If it would, the district court must dismiss the complaint unless the plaintiff can show that the conviction or sentence has already been invalidated. *Id*. *See also Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (concluding that state prisoner's "claim for declaratory relief and money damages based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983").

The rule in *Heck* has been applied to plaintiffs using § 1983 to attack the revocation of their parole. *See, e.g., Newmy v. Johnson*, 758 F.3d 1008, 1011-12 (8th Cir. 2014) (district court properly dismissed plaintiff's complaint because judgment for plaintiff would necessarily imply the invalidity of the parole revocation); and *Flying Horse v. Hansen*, 691 Fed. Appx. 299, 300 (8th Cir. 2017) (*Heck* bar applied to plaintiff's claim for damages after revocation of parole, because "a judgment in his favor would render the parole revocation invalid").

Plaintiff is seeking damages for what he terms his "wrongful incarceration." (Docket No. 1 at 39). Judgement in favor of the plaintiff would clearly attack the validity of his parole revocation. However, plaintiff is not allowed to use § 1983 as a substitute for habeas corpus relief. Furthermore, he does not make any allegations that his parole revocation and incarceration have been overturned. A § 1983 claim that would necessarily imply the invalidity of plaintiff's incarceration is barred until the incarceration has been overturned or invalidated. Likewise, plaintiff's request that Probation and Parole Procedure P3-8.1 be changed also implies the invalidity of plaintiff's parole revocation. He states a change is necessary because he believes it is wrong that someone can be arrested, and their parole revoked, without it proof that the person committed a crime. Plaintiff is essentially attacking the basis on which his parole was revoked; that is, if the Probation and Parole Procedure were changed, there would be no foundation for his

revocation. Plaintiff makes this attack without having demonstrated that his revocation and incarceration have been overturned. As such, these claims are barred by *Heck* and must be dismissed.

### G. Plaintiff's Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. (Docket No. 4). The Court will deny plaintiff's motion as moot, given the fact that plaintiff's claims in this matter are being dismissed subject to 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $25.54 within twenty-one (21) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice for failure to state a claim and/or because it is legally frivolous. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal with be entered herewith.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Docket No. 4) is **DENIED AS MOOT**.

Dated this 22nd day of August, 2018

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE